**United States District Court**
**For the Northern District of California**

**E-FILED on**    5/7/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY WOLFES,<br><br>      Plaintiff,<br><br>    v.<br><br>BURLINGTON INSURANCE COMPANY, et al.<br><br>      Defendants. | No. C-07-00696 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE CASES<br><br>**[Re Docket No. 32]** |
| JENNY WOLFES,<br><br>      Plaintiff,<br><br>    v.<br><br>BURLINGTON INSURANCE COMPANY, et al.<br><br>      Defendants. | No. C-07-04657 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE CASES; DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE<br><br>**[Re Docket No. 8, 9, 20]** |

      Plaintiff Jenny Wolfes ("Wolfes") was sued by her former employer, Big Sky Entertainment III, Inc. ("Big Sky") in Santa Clara County Superior Court. *Big Sky Entertainment III et al. v. Jenny*

1  *Wolfes*, Sup. Ct. Case No. 104CV025291 ("the Big Sky Action").  Wolfes subsequently sued
2  defendant The Burlington Insurance Company ("Burlington") in California state court seeking a
3  declaration that Burlington has a duty to defend or indemnify her in the Big Sky Action under an
4  insurance policy issued to Big Sky.  Burlington successfully removed the case to this court.  *Wolfes*
5  *v. Burlington Ins. Co.*, Case No. 07-00696.  Wolfes then filed a second action against Burlington in
6  federal court, asserting causes of action for breach of contract, breach of the covenant of good faith
7  and fair dealing, and intentional and negligent infliction of emotional distress, and seeking, *inter*
8  *alia*, punitive damages.  *Wolfes v. Burlington Ins. Co.*, Case No. 07-04657.

Before this court are several motions.  First, Wolfes moves for partial summary judgment in Case No. 07-00696 that Burlington had and continues to have a duty to defend her in the Big Sky Action.  Second, Wolfes and Burlington submit cross-motions regarding Case No. 07-04657. Wolfes moves to consolidate Case No. 07-04657 and Case No. 07-00696 while Burlington moves to dismiss Case No. 07-04657 entirely as improperly duplicative of Case No. 07-00696.  Third, to the extent that the court is not inclined to dismiss Case No. 07-04657, Burlington moves to strike plaintiff's claim for punitive damages. For the reasons set forth below (1) the court denies Burlington's motion to dismiss Case No. 07-04657 and will consolidate it with Case No. 07-00696, (2) grants Burlington's motion to strike Wolfes' prayer for punitive damages, and (3) denies Wolfes' motion for summary judgment that Burlington had a duty to defend her.

## I. BACKGROUND

### A.  The Big Sky Action

Big Sky operated a night club, the Blue Tattoo, in San Jose in 2004.  From June 2004 to July 2004, Wolfes, the plaintiff in this action, was vice president, secretary, officer and director of Big Sky as well as the night club's manager.  In spring 2004, Big Sky was in financial difficulty and seeking to sell its assets to a third party.  Wolfes objected to the sale, suggesting that the assets should be sold on the open market, and allegedly vowed to do everything in her power to stop the sale. According to the complaint in the Big Sky Action, Wolfes solicited employees and promoters of the club to stop working with Big Sky, made unauthorized contact with the San Jose Planning Commission and other agencies, made accusations about the building site and made phone calls that

were allegedly designed to discourage the third party purchasers from buying the club's assets.  On or about July 21, 2004, the buyers gave notice that they wanted to back out of the transaction.

On August 17, 2006, Big Sky and its directors filed a verified complaint against Wolfes seeking injunctive relief enjoining Wolfes from contacting the buyers of the company assets or taking action to affect the company without first consulting with and obtaining approval from Big Sky's directors.  The complaint alleges causes of action for conversion, breach of fiduciary duty and interference with prospective economic relations under state law.  Wolfes cross-complained against plaintiffs in the Big Sky Action for defamation.

### B. The Federal Actions

Big Sky was insured by two Commercial General Liability insurance policies: (1) an insurance policy from Crusader Insurance Company, number SRL-004903, which insured officers, directors and employees from June 27, 2003 to June 27, 2004 (which is not at issue in this case); and (2) a commercial general liability insurance policy from defendant Burlington, number 585BW03318 ("the Policy"), from June 27, 2004 to September 27, 2004.  Decl. of Patrick C. Stokes ("Stokes Decl."), Ex. A.  Wolfes tendered her defense of the Big Sky Action to Burlington, but Burlington declined to defend her.[1]  Wolfes subsequently filed suit in state court against Burlington seeking a declaration that Burlington had a duty to defend her against he claims brought by Big Sky. The action was removed to this court.  *Wolfes v. Burlington Ins. Co.*, Case No. 07-00696.

Several months after filing Case No. 07-00696, Wolfes filed a second action, Case No. 07-04657, against Burlington in federal court asserting claims for breach of Burlington's insurance contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress in conjunction with Burlington's failure to provide a defense to Wolfes.

---

[1] William Leunis, a plaintiff and counterdefendant in the Big Sky Action tendered his defense of Wolfes's counterclaim for defamation to Burlington, which defense Burlington agreed to provide. Also, plaintiff tendered her defense of the Big Sky Action to Crusader, which (unlike Burlington) agreed to provide a defense under the policy.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE CASES—No. C-07-00696 RMW; 07-04657
MAG                                                                 3

### C. The Burlington Policy

Wolfes contends that the Policy requires Big Sky to provide her a defense in the Big Sky Action. Section II of the CGL Coverage Form of the Policy, "Who is an Insured," states, in relevant part: "If you are designated in the declarations as . . . [a]n organization other than a partnership, joint venture, or limited liability policy, you are an insured. Your 'executive officers' and directors are also insured, but only with respect to their duties as your officers or directors." Stokes Decl., Ex. A at 028, § II ¶ 1.d. Section I, "Coverages," Coverage B(1.a) of the same coverage form reads, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.*

The Policy defines "personal advertising injury" as follows: "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." *Id.* § V ¶ 14.d.

### D. Tender of Defense

On October 20, 2005, Wolfes tendered her defense to Burlington. Kraft Decl., Ex. D. On November 1, 2005, a claims manager at Burlington, Frank Evans, acknowledged receipt of the letter tendering Wolfes' defense, but disclaimed coverage and declined to provide a defense. *Id.*, Ex. E. On July 17, 2006, Wolfes requested that Burlington reconsider its decision. *Id.*, Ex. F. On September 11, 2006, Burlington reaffirmed its decision to decline provision of a defense. *Id.*, Ex. G.

Burlington declined coverage for two reasons. First, it asserted that there was no potential for coverage of the claims asserted against Wolfes in the Big Sky Action. Second, Burlington found that Wolfes was not an insured under the policy at the time of the acts alleged by Big Sky.

Burlington asserted there was no potential for coverage under the Policy because (1) the Big Sky Action "does not contain a cause of action for slander or libel"; and (2) the complaint "does not contain any allegations of unprivileged communication by Ms. Wolfes which slanders or libels an organization or the organization's goods, products, or services." *Id.*, Ex. G at 5-6, 7.

1    Burlington also believed that Wolfes was not an insured under the Policy because the
2 complaint in the Big Sky Action alleges that when Wolfes made statements to various state agencies,
3 Wolfes advised that she was no longer affiliated with Big Sky. *Id.*, Ex. D. at 5.

## II.  ANALYSIS

### A.  Motion for Summary Judgment

Wolfes moves for summary judgment that Burlington has a duty to defend her in the Big Sky Action.  Burlington did not, however, move for summary judgment that it does not have a duty to defend her. As discussed below, the court denies Wolfes' motion for summary judgment that Burlington has a duty to defend her.  Although it would appear that Burlington does not have a duty to defend, until Burlington successfully moves for summary judgment that it has no defense duty, judgment cannot be entered against plaintiff Wolfes on her complaints alleging coverage.

#### 1.  Duty to Defend

An insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved.  The insurer's duty to defend, however, also runs to claims that are merely potentially covered in light of facts alleged or otherwise disclosed.  The duty to defend "extends beyond claims that are actually covered to those that are merely potentially so – but no further." *Buss v. Superior Court*, 16 Cal. 4th 35, 45-46 (1997) (citing *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 287, 659 n. 9 (1993) and *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal. App. 4th 1, 107-108 (1996)).  "[I]n an action wherein none of the claims is even potentially covered, the insurer does not have a duty to defend." *Id.* at 47.  "[I]n a 'mixed' action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to those that are not, having not been paid therefor." *Id.* at 47-48.  An insurer must defend a mixed action in its entirety prophylactically. *Id.* at 49.  The duty to defend arises on tender of the defense and lasts until either the conclusion of the underlying lawsuit or until the insurer can establish conclusively that there is no potential for coverage (and thus no duty to defend).  *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993); *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 832 (1997).

Under California law, "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." *Cort v. St. Paul Fire and Marine Ins. Companies, Inc.*, 311 F.3d 979, 983 (9th Cir. 2002) (citing *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001)). A defense is excused only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose*, 6 Cal. 4th at 295. "[T]he insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Id.* at 300. On a motion for summary judgment on the insurer's duty to defend, an insurer must be able to negate coverage as a matter of law. *Maryland Cas. Co. v. Nat'l Am. Ins. Co of Calif.*, 48 Cal. App. 4th 1822, 1832 (1996).

### 2. Whether Wolfes Was An Insured

Wolfes argues that contrary to Burlington's denial letters stating that she was not an insured, there is potential that she was an officer of Big Sky when she made the statements complained of in the Big Sky Action. As set forth above, the Policy states, "Your 'executive officers' and directors are also insured, but only with respect to their duties as your officers or directors." Stokes Decl., Ex. A at 028, § II ¶ 1.d. Burlington's first argument that Wolfes was not an insured is based on the contention that Wolfes was not employed by Big Sky when she took the actions leading to the Big Sky Action. Its second argument is that even if she was technically employed, she was not acting "with respect to [her] duties as [Big Sky's] officer[] or director[]." The parties appear to agree that the statements Wolfes is accused of making are set forth in paragraphs 18 and 21 of the Big Sky complaint:

> Paragraph 18: On or about July 21, 2004, plaintiffs heard from reliable sources that Wolfes had made telephone calls to interfere with the sales transaction. That evening, the buyers gave notice that they wanted to back out of the purchase of assets, and the company had to make significant concession to the buyers to keep them interested.
>
> Paragraph 21: Notwithstanding the decisions of the directors and shareholders to sell company assets, Wolfes has continued to take actions which are disruptive of that sale. Plaintiffs have spoken with employees of the company and with promoters who state that defendant Wolfes has solicited them to stop working with the company. Defendant Wolfes has made accusations about building at the property without knowing all the facts and without discussing the facts at directors' meetings. She has made unauthorized contact with the San Jose Planning Commission, and other state and local agencies, for the apparent purpose of interfering with the planned sale of

assets to the buyers. She has made demands to inspect corporate records at times when she knew the director and Chief Financial Officer of the company was out of the area and when the company could not possibly comply. Defendants actions are not beneficial to the company and are in breach of her fiduciary duties to the company, its shareholders and creditors.

With regard to whether she was a director eligible for coverage during the appropriate time period, Wolfes argues that she could have made the statements complained of in paragraphs 18 or 21 at some time between July 8 and July 20, 2004, during which time she was employed by Big Sky. In support of her position, Wolfes presents minutes of a July 19, 2004 meeting of the Big Sky board of directors. The meeting was conducted in two parts: the first part was conducted on July 19, 2004 at which the board discussed the finances of the company and the possible sale of the company to an outside party to which Wolfes appears to have been opposed. Decl. of David Kraft ("Kraft Decl."), Ex. C at 067-68. At that time, "Ms. Wolfes discussed that the company should be sold 'properly' through a third party broker." *Id.* Thereafter, the meeting was temporarily recessed, and the second part was "reconvened at 8:00PM on July 20th, 2004 with Mr. Pope, Mr. Simpson and Mr. Leunis attending." *Id.* at 068. At the reconvened meeting, at which Wolfes was not present, "[i]t was decided that Ms. Wolfes should be removed from all officer positions within the company, including being Vice President and Secretary." *Id.* Wolfes does not contest the contents of these minutes or argue that she was not removed as director at the reconvened board meeting. Thus, the undisputed facts establish that at least as of 8:00 p.m. on July 20, 2004, Wolfes was no longer a director of Big Sky.

However, the court cannot conclude based on the evidence presented that Wolfes could have only made the statements alleged at paragraphs 18 and 21 after 8:00 p.m. July 20, 2004. The complaint merely alleges that plaintiffs heard from reliable sources that Wolfes had made telephone calls to interfere with the sales transaction on July 21, 2004 and that the buyers called that night to indicate that they wanted to back out. Big Sky Compl. ¶ 18. This does not mean that the statements were made on July 21, nor does Burlington submit any evidence to fix those statements in time. Even assuming that Wolfes became dissatisfied only after the July 19, 2004 board meeting, Wolfes could have made some of the statements between the time she expressed her disagreement with the option of selling the company on July 19, 2004 and the time she was removed from the board at the

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE CASES—No. C-07-00696 RMW; 07-04657
MAG                                       7

end of the day on July 20, 2004. There appears to be an issue of material fact as to when the statements were made by Wolfes.

Burlington asserts, however, that even if the statements were made prior to 8:00 p.m. on July 20, 2004 when Wolfes was still an officer of Big Sky, the allegations in the Big Sky Action establish that Wolfes was not acting with respect to her duties as an officer of Big Sky when she made the statements. Wolfes, on the other hand, asserts that by the allegations of the complaint, she was potentially acting with respect to her duties as an officer of Big Sky.

The court finds that even assuming Wolfes was an officer at the time, there is no potential that she could have been acting with respect to her duties as an officer when she made the statements. The fact that the complaint does not allege why she made the statements does not foreclose the court's conclusion that her statements could not have made while acting with respect to her duties as an officer of Blue Sky. She contends that the entry in the July 19, 2004 minutes that "Ms. Wolfes discussed that the company should be sold 'properly' through a third party broker," Kraft Decl., Ex. C at 067-68, demonstrates that she was acting with the interests of the company in mind when she made the alleged statements. However, the statements she is alleged to have made are (1) facially contradictory to her still acting on behalf of the company since they interfere with the sale of the company and apparently attempted to disrupt Big Sky's relationships with its employees, the San Jose Planning Commission and other state and local agencies; and (2) are so far contrary to the interest of Big Sky that, even to the extent she may have represented that she was acting for Big Sky, those actions would have been outside the coverage provided by the insurance policy. The types of statements that form the basis of the Big Sky Action demonstrate that Wolfes is being sued in her capacity as an individual rather than as a director or shareholder of Big Sky. *See, e.g., Lomes v. Hartford Fin. Servs. Group*, 88 Cal. App. 4th 127, 133 (2001) (finding with respect to a similar insurance provision that a director and minority shareholder was not an insured because claims for defamation against him were made in his capacity as an individual, not as an director or shareholder). Further, the statements that form the basis of the underlying complaint include Wolfes's alleged assertion that she was no longer affiliated with Big Sky.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE CASES—No. C-07-00696 RMW; 07-04657
MAG                                              8

1    Based on the evidence presented on summary judgment, there are no material facts
2 suggesting that Wolfes was acting in her officer of Big Sky at the time of the statements made. To
3 the extent any of the statements alleged in the underlying action were made before her employment
4 with Big Sky was terminated, those statements could not have been in furtherance of her duties as an
5 officer of Big Sky as required under the Policy. Accordingly, the court finds as a matter of law that
6 Wolfes was not an insured under the Policy at the time the statements were made.

### 3.    Covered Causes of Action

Burlington further contends that it has no duty to defend because the underlying action does not allege any causes of action that are even potentially covered under the Policy. Wolfes, on the other hand, argues that the allegations in the underlying action, specifically those in paragraph 18, give rise to the potential for a cause of action for slander and for disparagement against her because of her statements about Blue Sky to third parties. The parties do not appear to dispute that both slander and disparagement could be covered under the Policy.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The complaint need not allege a covered cause of action so long as it discloses enough facts to indicate a potential for coverage. *See Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001) ("The duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party.").

Although the underlying action does not assert a claim for slander, Wolfes asserts that the paragraphs 18 and 21 of the complaint in the Big Sky Action set forth above support her contention that there was potential for coverage for slander[2] or disparagement. Here, because the court has

---

[2]  Cal. Civ. Code § 46 provides:

> Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:
> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome

determined that Wolfes is not an insured under the Policy, it need not reach the question of whether the facts in the complaint in the Big Sky Action potentially provide a basis for a claim that Wolfes engaged in slander or libel or that she herself was slandered, libeled or her services disparaged.

### B. Duplicative Action

Burlington asserts that the court should dismiss Case No. 07-04657 as impermissibly duplicative of Case No. 07-00696. "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) (citations and quotations omitted). The Ninth Circuit recently stated district courts may exercise their broad discretion to dismiss a duplicative later-filed action. Specifically, the Ninth Circuit held, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Id.* In *Adams*, the court applied the principles of claim preclusion and found that the later-filed suit was duplicative. *Id.* at 691. The court also found that the later-filed complaint was "an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her untimely motion for leave to amend her first complaint" and that given the circumstances of the case, the district court did not abuse its discretion in dismissing the later-filed complaint. *Id.* at 688.

Although the court agrees that it has the power to dismiss Case No. 07-04657 as duplicative as was done in *Adams*, the court will instead consolidate the actions. The court certainly wonders why Wolfes filed the second action. There does not appear to be any dispute that the two federal cases involve identical parties, the same insurance policy and the same decision to deny Wolfes a defense under the policy. It also does not appear that parties dispute that the claims could (and

---

disease;
3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
4. Imputes to him impotence or a want of chastity; or
5. Which, by natural consequence, causes actual damage.

1  should) have been brought in the same action. Wolfes did not seek to amend her claims in Case No. 07-00696 to add the claims now asserted in Case No. 07-04657, and she provides no explanation for filing an entirely separate action rather than seeking to amend.

Although Wolfes's new claims should not have been brought in a new action, it does not appear that she filed a new case in an attempt to circumvent a prior court ruling or for any other improper purpose. Therefore, the court finds that it is appropriate to merely consolidate Case No. 07-04657 with Case No. 07-00696.

### C.    Motion to Strike

Finally, Burlington asks the court to strike plaintiff's allegations of punitive damages under Fed. R. Civ. P. 56(f), contending that Wolfes cannot sufficiently plead facts to warrant an award of punitive damages. The court grants Burlington's motion to strike Wolfes' allegations of and prayer for punitive damages. Since Burlington has not breached its duties under the policy, the court strikes her claim for punitive damages.

### III.  ORDER

For the foregoing reasons, the court denies plaintiff's motion for summary judgment that Burlington has a duty to defend. The court denies Burlington's motion to dismiss the complaint as duplicative and grants plaintiff's motion to consolidate Case Nos. 07-00696 and 07-04657. The court also grants Burlington's motion to strike plaintiff's allegation and prayer for punitive damages.

DATED:    5/7/08

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

David Kraft                         DKraft6885@aol.com

**Counsel for Defendants:**

Aaron Agness                        aagness@wmattorneys.com
Richard C. Weston                   rweston@wmattorneys.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   5/7/08                        /s/ MAG
                                           **Chambers of Judge Whyte**