**E-FILED on** 3/10/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY WOLFES,<br><br>    Plaintiff,<br><br>    v.<br><br>BURLINGTON INSURANCE COMPANY, et al.<br><br>    Defendants. | No. C-07-00696 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**[Re Docket No. 49]** |
| JENNY WOLFES,<br><br>    Plaintiff,<br><br>    v.<br><br>BURLINGTON INSURANCE COMPANY, et al.<br><br>    Defendants. | No. C-07-04657 RMW |

Plaintiff Jenny Wolfes ("Wolfes") was sued by her former employer, Big Sky Entertainment III, Inc. ("Big Sky") in Santa Clara County Superior Court. *Big Sky Entertainment III et al. v. Jenny Wolfes*, Sup. Ct. Case No. 104CV025291 ("the Big Sky Action"). Wolfes subsequently sued

defendant Burlington Insurance Company ("Burlington") in California state court seeking declaratory relief that Burlington has a duty to defend or indemnify her in the Big Sky Action under an insurance policy issued to Big Sky. Burlington successfully removed the case to this court as Case No. 07-00696. *Wolfes v. Burlington Ins. Co.*, Case No. 07-00696. Wolfes then filed a second action against Burlington in federal court, Case No. 07-04657, asserting causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress, and seeking, *inter alia*, punitive damages. *Wolfes v. Burlington Ins. Co.*, Case No. 07-04657. Wolfes premised these claims on Burlington's breach of its duty to defend.

Burlington now moves for summary judgment as to its duty to defend Wolfes in the Big Sky Action and, in the alternative, for partial summary judgment as to the claims against it for breach of the implied covenant of good faith and fair dealing ("bad faith") and intentional infliction of emotional distress. For the reasons set forth below the court: (1) grants Burlington's motion for summary judgment that it did not have a duty to defend Wolfes and (2) grants Burlington's alternative motion for partial summary judgment as to the claims of bad faith and intentional infliction of emotional distress.

## I. BACKGROUND

Wolfes is involved in three cases involving the same underlying facts. The first is the Big Sky Action, in which she is the defendant and a counter-claimant. As set forth above, the second, Case No. 07-00696, was originally filed in state court but on February 2, 2007 Burlington removed it to this court on the basis of diversity. Wolfes filed the third action, Case No. 07-04657, in federal court approximately 7 months later on September 10, 2007. The two federal cases were related on January 7, 2008 and consolidated on May 7, 2008.

### A. The Big Sky Action

In 2004, Big Sky operated a night club, the Blue Tattoo, in San Jose. From June 2004 to July 2004, Wolfes was vice president, secretary, officer and director of Big Sky as well as the night club's manager. In spring 2004, Big Sky was in financial difficulty and seeking to sell its assets to a third party. Wolfes objected to the sale, suggesting that the assets should be sold on the open market, and allegedly vowed to do everything in her power to stop the sale. According to the complaint in the

Big Sky Action, Wolfes solicited employees and promoters of the club to stop working with Big Sky, engaged in unauthorized contact with the San Jose Planning Commission and other agencies, made accusations about the building site and made phone calls that were allegedly designed to discourage the third party purchasers from buying the club's assets. On or about July 21, 2004, the buyers gave notice that they wanted to back out of the transaction.

On August 17, 2006, Big Sky and its directors filed a verified complaint against Wolfes seeking injunctive relief enjoining Wolfes from contacting the buyers of the company assets or taking action to affect the company without first consulting with and obtaining approval from Big Sky's directors and alleging causes of action for conversion, breach of fiduciary duty and interference with prospective economic relations under state law. Wolfes cross-complained against plaintiffs in the Big Sky Action for defamation.

**B.     The Federal Actions**

Big Sky was insured by two Commercial General Liability (CGL) insurance policies: (1) an insurance policy from Crusader Insurance Company, number SRL-004903, which insured officers, directors and employees from June 27, 2003 to June 27, 2004 (not at issue in this case); and (2) an insurance policy from defendant Burlington, number 585BW03318 ("the Policy"), from June 27, 2004 to September 27, 2004. Decl. of Aaron C. Agness ("Agness Decl."), Ex. 1. Wolfes tendered her defense of the Big Sky Action to Burlington, but Burlington declined to defend her.[1] Wolfes subsequently filed suit against Burlington.

As discussed above, Wolfes brought two federal actions against Burlington. The first action, Case No. 06-00696, asserts a single claim for declaratory relief that, under the terms of the policy, Burlington is obligated to provide Wolfes a defense in the Big Sky Action. The second action, Case No. 07-04657, subsequently filed by Wolfes against Burlington in federal court, asserts claims for bad faith and for intentional infliction of emotional distress suffered in conjunction with Burlington's failure to provide a defense to Wolfes.

---

[1] William Leunis, a plaintiff and counterdefendant in the Big Sky Action tendered his defense of Wolfes' counterclaim for defamation to Burlington, which defense Burlington agreed to provide. Also, plaintiff tendered her defense of the Big Sky Action to Crusader, which (unlike Burlington) agreed to provide a defense under the policy.

**C. The Burlington Policy**

Section II of Burlington's CGL insurance policy defines who is an insured under the policy. In relevant part, it states: "If you are designated in the Declarations as . . . [a]n organization other than a partnership, joint venture, or limited liability policy, you are an insured. Your 'executive officers' and directors are also insured, but only with respect to their duties as your officers or directors." Agness Decl., Ex. A, § II ¶ 1.d (Docket No. 49-3 at 35 of 86). Section I sets forth the scope of coverage, providing as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." *Id.* at § I ¶ 1.a (Docket No. 49-3 at 33 of 86).

The insurance policy defines "personal advertising injury" as follows: "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." *Id.* § V ¶ 14.d (Docket No. 49-3 at 40 of 86).

**D. Tender of Defense**

On October 20, 2005, Wolfes tendered her defense to Burlington. Declaration of David Kraft, Ex. D. On November 1, 2005, a claims manager at Burlington, Frank Evans, acknowledged receipt of the letter tendering Wolfes' defense, but disclaimed coverage and declined to provide a defense. *Id.*, Ex. E. On July 17, 2006, Wolfes requested that Burlington reconsider its decision. *Id.*, Ex. F. On September 11, 2006, Burlington reaffirmed its decision to decline provision of a defense. *Id.*, Ex. G.

Burlington declined coverage for two reasons. First, it asserted that there was no potential for coverage of the claims asserted against Wolfes in the Big Sky Action. Specifically, Burlington asserted that there was no potential for coverage under the policy because (1) the Big Sky Action "does not contain a cause of action for slander or libel"; and (2) the complaint "does not contain any

allegations of unprivileged communications by Ms. Wolfes which slanders or libels an organization or the organization's goods, products, or services." *Id.*, Ex. G at 5-6, 7. Second, Burlington found that Wolfes was not an insured under the policy at the time of the acts alleged by Big Sky. *Id.*, Ex. G at 4.

### E. May 7, 2008 Order

On May 7, 2008, this court issued an order (1) denying Burlington's motion to dismiss case No. 07-04657 and consolidating it with Case No. 07-00696; (2) granting Burlington's motion to strike Wolfes' prayer for punitive damages; and (3) denying Wolfes' motion for summary judgment that Burlington had a duty to defend her. In denying Wolfes' motion for summary judgment, this court found, based on the evidence presented, that there was no evidence suggesting that Wolfes was acting in her role as director of Big Sky when she made the statements which form the basis of the Big Sky Action and thus was not an insured. This holding required the court to deny Wolfes' motion for summary judgment. No counter-motion was made by Burlington at the time.

## II. ANALYSIS

### A. Motion for Summary Judgment

Burlington now moves for summary judgment on the basis that, as a matter of law, its CGL insurance policy does not require it to provide Wolfes with a defense in the Big Sky Action. Burlington attacks Wolfes' theory that Wolfes was acting as a director of the company when she engaged in the actions at issue in the Big Sky Action. In the alternative, Burlington contends that neither the allegations in paragraph 18 nor 21, nor elsewhere in the complaint, trigger its duty to defend.[2]

#### 1. Duty to Defend

The California Supreme Court has held that "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) (citing *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263 (1966)).

---

[2] Burlington's moving papers additionally state that it has no duty to defend Wolfes against Leunis' underlying cross-complaint. However, because Wolfes has not raised such a claim, the court does not address it.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT—Nos. C-07-00696 RMW and C-07-04657 RMW  5

"Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (citing *Horace Mann*, *supra*, 4 Cal. 4th at 1081).

However "an insurer has a duty to defend only if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insurance policy." *Lomes v. Hartford Fin. Svcs. Group, Inc.*, 88 Cal. App. 4th 127, 132 (2001), (citing *Montrose*, 6 Cal. 4th at 295; *Horace Mann*, 4 Cal. 4th at 1081). "[T]he insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove it *cannot*." *Montrose*, 6 Cal. 4th at 300. However where there is no potential for coverage the insurance company has no duty to defend. *Lomes*, 88 Cal. App. 4th at 132 (citing *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 40 (1994)).

"Whether an insurance policy provides [the] potential for coverage and, thus, a duty to defend exists, is a question of law for the court to decide." *Lomes*, 88 Cal. App. 4th at 132 (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995)). Such a determination is typically made by comparing the allegations of the complaint to the policy terms. *Lomes*, 88 Cal. App. 4th at 132 (citing *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252, 1259 (1997)). Paragraph 18 and paragraph 21 of the complaint, respectively, allege the following:

> 18. On or about July 21, 2004, plaintiffs heard from reliable sources that Wolfes had made telephone calls to interfere with the sales transaction. That evening, the buyers gave notice that they wanted to back out of the purchase of assets, and the company had to made significant concessions to the buyers to keep them interested.
>
> 21. Notwithstanding the decisions of the directors and shareholders to sell company assets, Wolfes has continued to take actions which are disruptive of that sale. Plaintiffs have spoken with employees of the company and with promoters who state that defendant Wolfes has solicited them to stop working at the company. Defendant Wolfes has made accusations about building at the property without knowing all the facts and without discussing the facts at directors' meeting. She has made unauthorized contact with the San Jose Planning Commission, and other state and local agencies, for the apparent purpose of interfering with the planned sale of assets to the buyers. She has made demands to inspect corporate records at times when she knew the director and Chief Financial Officer of the company was out of the area and when the company could not possibly comply. Defendant's actions are not beneficial to the company and are in breach of her fiduciary duties to the company, its shareholders and creditors.

Request for Judicial Notice in Support of The Burlington Insurance Company's Motion for Summary Judgment or in the Alternative, for Partial Summary Judgment, Ex. D, ¶¶ 18, 21.[3]

The policy providea that Wolfes would be entitled to coverage if allegations were made with "respect to [her] duties as [Big Sky's officer or director]" and if the allegations involved claims related to personal and advertising injury, including but not limited to "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Agness Decl., Ex. A, § II ¶ 1.d; § V ¶ 14.d. However, the policy specifically provides that the insurer has no duty to defend "against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." *Id.* at § I ¶ 1.a.

Based on the foregoing, this court must decide whether, as a matter of law, Burlington did not owe a duty to defend Wolfes.

### 2. Duties as Director or Officer

In order to trigger Burlington's duty to defend, Wolfes first must show that the allegations in the Big Sky Action pertained to her actions with respect to her duties as an officer or director. California Corporation Code § 300(a) states, in pertinent part:

> [T]he business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board. The board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the board.

This principle was reiterated in *Lomes*, 88 Cal. App. 4th at 134, in which the appellate court held that "[a]n individual director has no authority to take action on behalf of the corporation without the consent of the board of directors." In the instant action, Burlington argues that Wolfes could not have been acting as a director when she attempted to interfere with the sale of Big Sky's assets

---

[3] Defendant submitted a request for the court to take judicial notice of the following: (1) Wolfes' complaint against Burlington in Case No. 07–00696; (2) Wolfes' complaint against Burlington in Case No. 07-04657; (3) this court's order dated May 7, 2008; (4) Big Sky's complaint against Wolfes in the Big Sky Action; and (5) Leunis' first amended cross-complaint against Wolfes. Although judicial notice is not necessary with respect to the pleadings in the present case, the court will take judicial notice of Big Sky's complaint.

because her actions were in contravention of the board of director's majority decision to sell the assets.

In *Lomes*, 88 Cal. App. 4th, the court found that a similar situation failed to trigger an insurer's duty to defend. In that case, the defendant, a director and majority shareholder of Newton Wholesale, filed a counterclaim against the plaintiff, a director and minority shareholder of Newton Wholesale, in federal court for, *inter alia*, defamation. *Id.* at 129-130. When plaintiff sued Hartford Insurance Company, seeking representation, Hartford refused to represent him because, in accordance with the policy provisions, he was not "carrying out his duties as a director when he allegedly slandered [defendant]." *Id.* at 130. In an appeal from a partial summary judgment for plaintiff, the court of appeal reversed and found that plaintiff "cannot reasonably be said to have been acting in his capacity as a Newton Wholesale director when he allegedly defamed the corporation and his former partner. Such statements could hardly be considered helpful in attracting lenders to Newton." *Id.* at 133.

However, Wolfes contends that if the allegations in the Big Sky Action do not pertain to her duties as a director, they pertain to her duties as an officer of the corporation. Wolfes asserts that her actions were performed with the best interests of the company in mind. Wolfes recounts the following facts pertaining to an alleged double-ending transaction that she attempted to thwart: In or about July 2004, one of the Big Sky directors, Edward Pope ("Pope"), proposed to sell Big Sky to Bobby Tran and Khoa Nguyen, collectively doing business as Gruv Industries. Plaintiff Jenny Wolfes' Opposition to the Burlington Insurance Company's Motion for Partial Summary Judgment, 9. Pope informed the Board of Directors that Gruv Industries would pay $225,000 for the assets of Big Sky. *Id.* However, Wolfes believed that Pope was secretly profiting from the transaction, as she knew that the price quoted by Pope was far below the value of the assets of Big Sky. *Id.* In order to prove her assumptions, Wolfes "performed acts and made statements calculated to delay and/or stop the transaction and prove that Pope was 'double-ending' the transaction." *Id.* at 9-10. Wolfes asserts that "[t]hese actions were in the best interests of Big Sky and within [her] responsibility as 'managing partner' of Big Sky." *Id.* at 10.

United States District Court
For the Northern District of California

Whether Wolfes' motives were justified or whether Big Sky was being misled in connection with the sale of its business is not the issue. Burlington covered Wolfes as an insured only with respect to her duties as a Big Sky officer or director. The allegations in the complaint against Wolfe expressly say that "[n]otwithstanding the decisions of the directors and shareholders to sell company assets Wolfe has continued to take actions which are disruptive of that sale. Wolfes cannot have been performing her duties as an officer or director when she was trying to prevent that which the directors and shareholders of Big Sky had decided to do. It is important to note that Wolfes was not sued by Big Sky for advising against the sale which the board later appproved. She was sued for trying to disrupt the action Big Sky had voted to take.

Wolfes points to *Barnett v. Firemans Fund Ins. Co.*, 90 Cal. App. 4th 500 (2001), as supporting her coverage position. In *Barnett*, appellants, executive officers of MedPartners, a large physician practice management company, expressed concern to MedPartners and others that the management and organizational structure of the company violated California's prohibition against the corporate practice of medicine. *Id.* at 505. Appellants' employment was terminated and MedPartners filed suit, alleging that appellants had made representations that disparaged and damaged the company. *Id.* at 506. Appellants asked Fireman's Fund Insurance Company ("Fireman's") to defend them and, when Fireman's declined, they brought suit alleging breach of contract. *Id.*

On appeal, the court decided that "[b]ecause the complaint alleges [appellants] were seeking to further corporate interests when they criticized MedPartners, it is possible they were engaged with respect to their duties as executive officers when they committed the alleged misconduct and therefore a potential for coverage exists." *Id.* at 513. *Barnett* distinguished *Lomes*: "*Lomes's* analysis revolved around the absence of any evidence that the plaintiff was discharging his corporate duties when he defamed the entity. Here, however, [the court] must assume the truth of [appellants'] allegations that they were acting as officers seeking to further the interests of the corporation." *Id.* at 513, n.8.

In the present case, Wolfes was interfering with a decision the shareholders and directors of Big Sky had made. The court does not see how Wolfes can be said to have been acting in the capacity of an officer or director for the named insured, Big Sky Entertainment III, Inc., when the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT—Nos. C-07-00696 RMW and C-07-04657 RMW   9

acts for which she was being sued by Big Sky consisted of trying to get third parties to undermine the sale of business assets which the shareholders and directors of the corporation had voted to sell. The situation is quite different from that in *Barnett* where former officers of MedPartners were held entitled to a defense to a defamation claim brought against them by their former employer MedPartners. Before the former officers had their employment terminated and while purportedly acting in the capacity of officers, they made statements expressing concern that changes implemented by MedPartners would violate California's prohibition against the corporate practice of medicine. The court held that these former officers were entitled to a defense because they could have been acting as officers to advance the interests of MedPartners when they expressed concerns about MedPartners' corporate practice of medicine. Insuring that one's company complies with the law regarding the practice of medicine is within the scope of the duties of an officer or director. The former officers may have been so acting at the time they allegedly defamed MedPartners.

In contrast to the situation in *Barnett*, and based on the evidence presented, this court concludes that, as a matter of law, Wolfes was not acting within the scope of her duties as an officer or director when she allegedly committed the wrongful actions alleged by Big Sky. Therefore, she was not an insured under Big Sky's policy and was not entitled to a defense of the claims brought against her by Big Sky.

### 3. Allegations of Slander and/or Disparagement

Although Wolves' has been determined not to qualify as an insured at the time of the wrongful acts alleged in Big Sky's complaint, the court will nevertheless discuss whether the allegations involve claims related to personal and advertising injury.

Slander is defined as "false and unprivileged publication, orally uttered, . . . which . . . [t]ends directly to injure [any person] . . . by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; . . . or . . . [w]hich by natural consequence, causes actual damage." Cal. Civ. Code § 46.

Wolfes argues that there is a genuine issue of material fact as to whether the Big Sky Action included a cause of action for slander. She states that a reasonable interpretation of paragraph 18 of the complaint is that Wolfes allegedly made *false* statements to third parties that tended to injure the

reputation of the plaintiffs and that a reasonable interpretation of paragraph 21 is that Wolfes allegedly made *false* accusations about the property that tended to injure the reputation of plaintiffs, and thus interfere with the sale. (Emphasis added). She argues that such an interpretation triggers Burlington's duty to defend.

Disparagement is the publication of false and injurious statements that are derogatory of another's goods or services. *See Total Call Intern., Inc. v. Peerless Ins. Co.*, 181 Cal.App. 4th 161, 169 (2010). Wolfes argues that there is a genuine issue of material fact as to whether the Big Sky Action included a cause of action for disparagement. She states that paragraph 18 raises the possibility of a disparagement claim because Big Sky's need to make concessions to the purported buyers could only be the result of Wolfes' alleged statements interfering with the sales transaction. Likewise, Wolfes argues that paragraph 21 raises the possibility of a disparagement claim because a reasonable interpretation of that portion of the complaint is that Wolfes made statements, either to buyers or to third parties, that tended to interfere with the sale, while still recognizing that the alleged statements could only interfere with the sale if they called into question the value and/or propriety of the sale. Again, she argues that such an interpretation triggers Burlington's duty to defend.

Contrary to Wolfes' assertions, neither paragraph 18 nor paragraph 21 charge Wolfes with slander or disparagement and Wolfes cannot speculate as much in order to create coverage. *See Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability . . ."). Moreover, while liability insurers must defend a suit which alleges claims potentially within the scope of policy coverage, and while facts extrinsic to the allegations of the complaint trigger a duty to defend when they reveal a possibility that the policy may cover the claim, such extrinsic facts must be known by the insurer at the inception of the lawsuit. *Id.* at 1113-14.

A "false statement" is a key element in a claim of slander or disparagement. *See* Cal. Civ. Code § 46; Merriam-Webster's Dictionary of Law, 1996. Nowhere in the underlying complaint does Big Sky assert that Wolfes made any false statements. "For there to be coverage, the [underlying complaint] must have alleged every necessary element of [slander or disparagement]." *Lindsey v. Admiral Ins. Co.*, 804 F. Supp. 47, 52 (N.D. Cal. 1992) (applying California law). While it is

possible that the existence of factual allegations anywhere in a complaint can give rise to potential liability for slander or disparagement, *see Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995) (applying California law), no such factual allegations are alleged in the underlying complaint.

Because Wolfes fails to present any genuine issue of material fact as to whether the underlying complaint asserts a claims for slander or disparagement, the court concludes that, as a matter of law, Burlington does not owe Wolfes a duty of defense under the terms of the insurance policy.

### B.     Defendant's Alternative Motion for Partial Summary Judgment

Burlington also asks that the court dismiss Wolfes' claims against it for bad faith and intentional infliction of emotional distress.

#### 1.     Bad Faith

A claim for bad faith requires a tortious breach of the covenant of good faith and fair dealing that is implied by law in every contract. Breach of this covenant involves something beyond the breach of the specific contractual duties or mistaken judgment. *Congleton v. Natl. Union Fire Ins. Co.*, 189 Cal. 3d 51, 59 (1987). Before it can be determined that an insurance company acted in bad faith in refusing to defend the insured, it must be shown that the refusal was without proper cause. "[D]eclining to perform a contractual duty under the policy *with proper cause* is not a breach of the implied covenant." *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. 3d 1, 54 (1985).

Because this court has determined that Burlington had no duty to defend Wolfes in the underlying lawsuit, it follows that Burlington could not have breached the duty it owed her under the CGL insurance policy. "It is clear that if there is no . . . [coverage under the policy], there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).

Based on the foregoing, this court will grant Burlington's motion for summary judgment that, as a matter of law, Wolfes failed to state a claim for bad faith.

#### 2.     Intentional Infliction of Emotional Distress

In order for Wolfes to prove a claim for intentional infliction of emotional distress she must plead and prove acts by Burlington, directed at her, which are "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Schlauch v. Hartford Acc. & Indem. Co.*, 146 Cal. App. 3d 926, 936 (1983).

This court has determined that Burlington has not breached its duty of defense. Because Burlington did not have any obligation to provide coverage under the policy, its actions in denying coverage cannot have risen to the level of those that result in an intentional infliction of emotional distress. As such, this court will grant Burlington's motion for summary judgment that, as a matter of law, Wolfes failed to state such a claim.

### III. ORDER

For the foregoing reasons, the court grants Burlington's motion for summary judgment that it has no duty to defend. The court also grants Burlington's alternative motion for partial summary judgment as to Wolfes' claims for bad faith and intentional infliction of emotional distress.

DATED: 3/10/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Gerald A. Emanuel                      jemanuel@hinklelaw.com

**Counsel for Defendants:**

Aaron Agness                        aagness@wmattorneys.com
Richard C. Weston                 rweston@wmattorneys.com
Christine DeMetruis               cdemetruis@wmattorneys.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/10/10                                        TER
                                                                        **Chambers of Judge Whyte**